## UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

WAYSIDE CHURCH, an Illinois Not-For-Profit (Ecclesiastical) Corporation, et al, individually and on behalf of a class of all others similarly situated,

Plaintiffs-Appellees,

v.

VAN BUREN COUNTY, MI, et al.,

Defendants-Appellees,

VISSER AND ASSOCIATES, PLLC; DONALD R. VISSER; DONOVAN VISSER

Non-Party Appellants.

On Appeal from the United States District Court for the Western District of Michigan, No. 1:14-cv-01274

## PLAINTIFFS-APPELLEES' BRIEF ON APPEAL

## <u>CORPORATE DISCLOSURE STATEMENT</u>

None of the named Plaintiffs are subsidiaries or affiliates of a publicly owned corporation.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ......................................................... ii

TABLE OF CONTENTS ................................................................................. iii

TABLE OF AUTHORITIES .................................................................. iv

STATEMENT REGARDING ORAL ARGUMENT .............................................1

COUNTERSTATEMENT OF JURISDICTION ...................................................2

COUNTER STATEMENT OF ISSUES PRESENTED...........................................3

INTRODUCTION ..........................................................................................4

COUNTERSTATEMENT OF THE CASE.............................................................6

SUMMARY OF THE ARGUMENT ...................................................................12

STANDARD OF REVIEW AND LEGAL FRAMEWORK ..................................14

ARGUMENT ...............................................................................................16

    I.     The Vissers Fail to Address the Independent Basis for the Protective Order..................................................................................16

    II.    Class Certification Creates an Attorney-Client Relationship Between Absent Class Members and Class Counsel .........................................18

    III.   The Protective Order was Based on the District Court's Findings that the Vissers' Solicitations Presented a Likelihood of Serious Abuse ..22

    IV.   The Protective Order is Narrowly Tailored .......................................27

CONCLUSION ...............................................................................................28

# TABLE OF AUTHORITIES

**Cases**

*Arkansas Teacher Retirement Sys. v. State Street Bank and Trust Co*.,
   512 F. Supp. 3d 196 (D. Mass. 2020) ................................................................21

*Bower v. Bunker Hill Co*., 689 F. Supp. 1032 (E.D. Wash. 1985) ..........................20

*DaSilva v. Border Transfer of MA, Inc.*, No. 16-11205-PBS (D. Mass. 2018).......21

*Dodona I, LLC v. Goldman, Sachs & Co*., 300 F.R.D. 182 (S.D.N.Y. 2014).........20

*Fox v. Saginaw Cnty*., Mich., 35 F.4th 1042 (6th Cir. 2022) .............................8, 15

*Fulco v. Continental Cablevision, Inc.*, 789 F. Supp. 45 (D. Mass. 1992) .............20

*Georgine v. Amchem Prod., Inc*., 160 F.R.D. 478 (E.D. Pa. 1995)..........................8

*Grosswiler v. Freudenberg-Nok Sealing Techs.*,
   642 Fed. App'x 596 (6th Cir. 2016) ....................................................................18

*Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981)...................................................14, 16

*Hammond v. City of Junction, Kan.*, 126 F. App'x 886 (10th Cir. 2005) ...............20

*Harris v. Vector Marketing Corp.*, 716 F. Supp. 2d 835 (N.D. Cal. 2010).............20

*In re Community Bank of Northern Virginia*, 418 F.3d 277 (3rd Cir. 2005) ... 26, 27

*In re Federal Skywalk Cases*, 97 F.R.D. 370 (W.D. Mo. 1983)..............................20

*In re Nat'l Prescription Opiate Litig*., 927 F.3d 919 (6th Cir. 2019).....................14

*In re Sch. Asbestos Litig.*, 842 F.2d 671 (3d Cir. 1988) .........................................15

*Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193 (1985) .................................19

*McKenzie Law Firm, P.A. v. Ruby Receptionists, Inc*.,
   No. 3:18-cv-1921-SI (D. Or. May 29, 2020) .......................................................21

*McWilliams v. Advanced Recovery Sys., Inc.*,
  176 F. Supp. 3d 635 (S.D. Miss. 2016) ...........................................................8, 15

*Melo v. United States*, 825 F. Supp. 2d 457 (S.D.N.Y. 2011) .................................22

*Mich. Coal. Of Radioactive Material Users, Inc. v. Griepentrog*,
  945 F.2d 150 (6th Cir. 1991) ...............................................................................10

*MJK Family LLC v. Corporate Eagle Mgmt. Servs., Inc.*,
  676 F. Supp. 2d 584 (E.D. Mich. 2009) ..............................................................25

*Morris & Doherty, P.C. v. Lockwood*, 672 N.W.2d 884 (Mich. Ct. App. 2003) ....22

*Resnick v. Am. Dental Ass'n*, 95 F.R.D. 372 (N.D. Ill. 1982) .................................20

*Van Gemert v. Boeing Co.*,
  590 F.2d 433 (2nd Cir. 1978), *aff'd*, 444 U.S. 472 (1980)...................................19

*Velasquez-Monterrosa v. Mi Casita Restaurants*,
  No. 5:14-CV-488-BO (E.D.N.C. Sept. 30, 2016) ................................................21

## Other Authorities

Michigan Ethics Opinion No. RI-219, Sept. 6, 1994................................................22

## Treatises

2 McLaughlin on Class Actions, § 11:1 (20th ed.)..................................................19

Federal Judicial Center, Manual for Complex Litigation (Fourth)..........................19

Newberg and Rubenstein on Class Actions (6th ed.) ................................. 14, 15, 19

*Restatement (Third) of Law Governing Lawyers*......................................................19

## **STATEMENT REGARDING ORAL ARGUMENT**

This appeal presents the straightforward issue of whether the District Court erred in entering an Order barring Appellants from soliciting or contacting members of a certified class. Plaintiffs-Appellees believe that this appeal can be decided on the briefs and do not request oral argument. However, if this Court grants Appellants the opportunity to present oral argument, Plaintiffs-Appellees respectfully request the opportunity to present oral argument in response.

## COUNTERSTATEMENT OF JURISDICTION

Plaintiffs-Appellees concur in Appellants' Statement of Jurisdiction to the extent that Appellants timely filed a notice of appeal and that this Court would normally have jurisdiction to review the orders at issue under 28 U.S.C. § 1292(a)(1) and the collateral order doctrine. However, because the opt-out period has expired, Appellants are barred from contacting class members regardless of the protective order because class members are indisputably represented by class counsel. Accordingly, a favorable decision from this Court cannot provide Appellants any relief. This Court therefore lacks subject-matter jurisdiction over this appeal. *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 557-58 (6th Cir. 2021).

## <u>COUNTER STATEMENT OF ISSUES PRESENTED</u>

1.      Did the District Court commit error when it held that Michigan Rule of Professional Conduct 4.2(a) barred third party attorneys from communicating with absent members of a preliminarily certified class after certification, when those absent class members had not retained the third party attorneys for representation prior to certification?

**Plaintiffs-Appellees' Answer: No.**

2.      Did the District Court abuse its discretion in entering a Protective Order barring Appellants from communicating with members of the class who had not retained Appellants for representation prior to certification, where the District Court later clarified that the Protective Order did not bar Appellants from communicating with members of the class who contacted Appellants for representation of their own accord, if Appellants had not addressed communications to those members of the class after certification?

**Plaintiffs-Appellees' Answer: No.**

## INTRODUCTION

This appeal by non-party Appellants Visser and Associates, PLLC, Donald Visser and Donovan Visser (collectively, "the Vissers") arises out of the Vissers' campaign to undermine a class action settlement preliminarily-approved by Judge Paul Maloney after the Plaintiffs and forty-three Michigan counties reached agreement following extensive negotiations facilitated by this Court's Mediation Office. The campaign to undermine the settlement has included the solicitation by the Vissers of named Plaintiffs who were proposed class representatives prior to certification and the solicitation of class members after certification of the class. The District Court correctly determined that the Vissers' solicitations were abusive and appropriately entered a protective order barring the Vissers from communicating with members of the class, if those class members had not retained the Vissers for representation prior to certification. The Vissers have failed to identify any basis for reversal of the District Court's order.

As Judge Maloney has noted, the intentions of the Vissers and affiliated counsel in attempting to undermine the settlement are clear. "They wish to reap the benefits of the *Wayside* Parties' counsel's extensive settlement negotiations by intervening in this matter and attempting to become class counsel." (Order Denying Motions to Consolidate, RE 241, Page ID # 4166.) As part of the Vissers' campaign to undermine the settlement, they solicited members of the certified class in an

attempt to induce them to opt out or object to the settlement. (Order Resolving Show Cause Order, RE 272, Page ID # 4449 ("At issue is the Vissers' solicitation of named plaintiffs in this action, in an apparent attempt to encourage class members to opt out of the class and retain the Vissers as legal counsel to instead pursue their own individual claims.").)

## COUNTERSTATEMENT OF THE CASE

On March 24, 2023, Judge Paul Maloney issued an Order Preliminarily Approving Settlement, Conditionally Certifying Class for Settlement Purposes, Approving Form and Manner of Class Notice, and Setting Date for Final Approval Hearing (Preliminary Approval Order, RE 234, Page ID # 4131.) Shortly after entry of the Final Approval Order, Class Counsel learned that the Vissers sent solicitation letters to class members, including four named plaintiffs, identified in the Second Amended Complaint as proposed class representatives, "in an attempt to encourage these individuals to opt out of the" settlement. (Order Resolving Show Cause Order, RE 272, Page ID # 4444.) The letters advised these individuals that they had a "real claim" for "surplus proceeds" and stated that the Vissers are "engaging in litigation and collection efforts to secure turnover of those funds." (*Id.*) Despite the Vissers' knowledge of the settlement at the time they sent the letters to class members (including multiple named plaintiffs), "[t]he letters are silent as to the *Wayside Church* action and class settlement." (*Id.*) Because of these improper communications, five days after the District Court granted preliminary approval of the settlement, Class Counsel filed an Emergency Motion for Protective Order Governing Non-Party Solicitations of Named Plaintiffs and Class Members. (Motion for Protective Order, RE 245.)

On March 29, 2023, Plaintiffs filed their Motion for Protective Order asking the District Court to bar the Vissers from communicating with members of the class and to permit Plaintiffs to conduct discovery, along with other relief, because of the Vissers' solicitation of class members. On March 30, 2023, the District Court entered an Order directing the Vissers to respond to Plaintiffs' Motion for Protective Order. (Order Directing Response, RE 248.)

On April 5, 2023, the Vissers filed their Response to the Motion for Protective Order. (RE 250.) The Vissers claimed that their solicitation of four named plaintiffs were "inadvertent accidents[,]" and acknowledged that "the Court's certification of the Wayside class precludes further solicitation."[1] (Response to Motion for Protective Order, RE 250, Page ID # 4233, 4229.)

On April 6, 2023, the District Court entered an Order for Non-Party Counsel to Show Cause. (Order to Show Cause, RE 251.) In the Order to Show Cause, the District Court found that, although the Vissers' communications "tiptoe up to the line, they do not cross the line from permissible solicitation to misleading, improper communication with potential class members."[2] (Order to Show Cause, RE 251,

---

[1] Inexplicably, in this Court the Vissers question why the Trial Court would state that "the Vissers themselves conceded below that post-certification is inappropriate" and state that "Visser does not believe it has conceded such a point" (Case No. 23-1471, Dkt. 40 at p. 22 n. 6.)

[2] Plaintiff-Appellees did not (and do not) share the Trial Court's perspective regarding whether these communications crossed that line. These communications did not disclose the existence of the Wayside class action or of the proposed

Page ID # 4277.) The District Court also noted that, "[i]mportantly, Visser claims it ceased soliciting clients upon the preliminary approval of the settlement[.]" (*Id.*) However, the District found the Vissers' explanations for their communications with named plaintiffs unsatisfactory and ordered the Vissers to appear for a hearing to show cause why their communications with named plaintiffs did not violate the Michigan Rules of Professional Conduct. (RE 251, Page ID # 4278-4279.)

At the show cause hearing, Class Counsel provided the District Court with three additional solicitation letters the Vissers had sent to named plaintiffs. (Order Resolving Show Cause Order, RE 272, Page ID # 4452). Class Counsel also presented to the District Court "a letter from Daniel O. Myers of Visser and Associates, PLLC, dated May 2, 2023—over five weeks after the Court preliminarily certified the class—addressed to…a member of the class." (Order Regarding Protective Order, RE 273, Page ID # 4456.) The District Court noted that, "[t]his

_____

settlement, suggested that recipients had to avail themselves of "our claims process" to recover and failed to disclose that the Vissers represent potential class members opposed to the settlement. (*See* Solicitation Letters, RE 246-1.) These representations and omissions were abusive. *See Fox v. Saginaw Cnty., Mich.*, 35 F.4th 1042, 1048 (6th Cir. 2022) (noting that failure to "even tell[] [potential class members] about the class action" is "hallmark abusive communication."); *McWilliams v. Advanced Recovery Sys., Inc.*, 176 F. Supp. 3d 635, 641 (S.D. Miss. 2016) (finding communications abusive in part because they suggested that "hiring [certain counsel] was the only way to recover damages."); *Georgine v. Amchem Prod., Inc*., 160 F.R.D. 478, 492 (E.D. Pa. 1995) ("To make the problem worse, many of the letters and advertisements did not inform the reader that the author or his firm already had voiced objections to some aspects of the *Georgine* class action.")

letter appears to directly contradict the Vissers' assertions that they ceased soliciting clients after the preliminary approval of the class settlement." (*Id.*, Page ID # 4457.)

On May 15, 2023, the District Court entered two Orders (Order Resolving Show Cause Order, RE 272; Order Regarding Protective Order, RE 273) finding that the Vissers had improperly solicited represented class members, and that, directly contrary to representations made to the District Court, the Vissers had continued to improperly solicit represented class members after acknowledging "that the Court's certification of the Wayside class precludes further solicitation[.]" (Order Regarding Protective Order, RE 273, Page ID # 4457-4458). The District Court also found that, because the Vissers had previously been compelled to respond to a motion for a protective order based on allegedly improper solicitation in *Fox v. Saginaw County*, E.D. Mich. Case No. 1:19-cv-11887, a case very similar to the case at bar, "the Vissers should have been well-versed in class action procedure and the proper method to communicate with potential class members." (Order Resolving Show Cause Order, RE 272, Page ID # 4453.) Based upon these findings, the District Court issued a formal order of reprimand (RE 272) and entered a protective order (the "Protective Order") barring the Vissers from communicating with members of the class who had not retained the Vissers for representation prior to the preliminary approval of the class on March 24, 2023. (Protective Order, RE 274.) The District Court permitted Class Counsel to serve discovery subpoenas upon the Vissers and

ordered that the Vissers produce an accounting of "class members they have solicited or communicated with, but only with respect to class members the Vissers solicited/communicated with, in any form, following the Court's preliminary approval of the class, and whom the Vissers did not represent prior to preliminary approval." (*Id*., Page ID # 4463-4464.)

On May 24, 2023, the Vissers filed a Notice of Appeal regarding the Protective Order and the Order Regarding the Protective Order. (RE 275.) On May 25, 2023, ten days after the entry of the Protective Order, the Vissers filed an Emergency Motion to Stay pending appeal in the District Court. (Visser Emergency Motion to Stay, RE 276). The next day, the Vissers filed a Motion to Stay in this Court. (Case No. 23-1471, Dkt. at p. 4.) On May 30, 2023, the Vissers produced what they represented to be the complete accounting of solicited class members required under the Protective Order. (RE 283.) On June 1, 2023, the Vissers produced their responses to the discovery subpoenas served upon them by Class Counsel. On June 14, 2023, the District Court denied the Vissers' Motion to Stay, finding that they had failed to establish any of the four stay factors, set forth by this Court in *Mich. Coal. Of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). (RE 287.) However, the District Court did clarify the Protective Order in response to the Vissers' objections, permitting the Vissers to communicate with class members who reach out to the Vissers after class

10

certification, only if the Vissers had "*never* communicated with or solicited [such persons] in the past regarding the subject matter of this case[.]" (*Id.* at Page ID # 4662) (emphasis in original).

On July 5, 2023, this Court issued an Order granting in part and denying in part the Vissers' Motion to Stay. (Case No. 23-1471, Dkt. 36.) This Court declined to stay the Protective Order in full, finding that "the Vissers have not shown a likelihood of success on the merits to stay the protective order in its entirety." (*Id.* at p. 2.) The Court also found that, because the Vissers had already complied with the discovery and accounting requirements, "their motion is moot to the extent it seeks to stay those obligations." (*Id.*) However, this Court did find the Protective Order overbroad in that it barred the Vissers from communicating with class members with whom they had had *pre*-certification, but not *post*-certification, communications. (*Id.* at Page ID # 3.) This Court stayed the Protective Order "insofar as it prohibits the Vissers from communicating with class members who initiate or reinitiate contact during the opt-out period without having received post-certification communications from the Vissers, including those who returned a signed representation agreement after March 24 without intervening post-certification communication." (*Id.* at Page ID # 5.)

## SUMMARY OF THE ARGUMENT

In an apparent effort to undermine the settlement reached in this matter and to advance their own interests, the Vissers solicited class members that they knew were represented by Class Counsel. The District Court reprimanded them for their unethical conduct. In their futile efforts to fend off judicial discipline, the Vissers told the District Court that they had stopped soliciting class members after the certification order—they had not. Now that the District Court has enjoined them from doing the very thing that they said they were not doing, they have appealed the injunction. The District Court rejected this gambit, and this Court should not reward the Vissers' misconduct.

The Vissers' appeal fails because the Vissers have failed to address one of the two independent bases for the District Court's entry of the Protective Order. The District Court found that the Vissers violated the Michigan Rules of Professional Conduct by soliciting named plaintiffs prior to certification of the class; and, the District Court found that, directly contrary to the Vissers' representations, they had continued their solicitation campaign by improperly soliciting class members who were known to be represented by Class Counsel following certification.

Even if the Protective Order was based solely on the Vissers' post-certification solicitation, the District Court made sufficient findings of a likelihood of serious abuses. The District Court correctly determined that, because it is widely

understood that an attorney-client relationship is created between class counsel and absent class members as a result of class certification, it was abusive for the Vissers to solicit absent class members following certification. The Protective Order is narrowly drawn and, as modified by the District Court and by this Court, prohibits the Vissers only from initiating communications with class members who had not retained them prior to certification, conduct that the Vissers themselves admit would be improper. The Vissers have failed to identify any basis for this Court to find that the District Court abused its discretion in entering the Protective Order.

## STANDARD OF REVIEW AND LEGAL FRAMEWORK

An order restricting communications with absent class members is reviewed for abuse of discretion. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). "Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Id*. A district court abuses its discretion if its order is supported "neither by factual findings nor legal arguments." *In re Nat'l Prescription Opiate Litig*., 927 F.3d 919, 929 (6th Cir. 2019) (quoting *Gulf Oil*, 452 U.S. at 102).

While "[t]here is no per se bar on nonparty communications with absent class members, and indeed, there may be First Amendment protections for these communications in certain circumstances" there are ethics concerns attendant to such communications, including "the rules addressing communications with represented parties, if the communications are made after class certification." Newberg and Rubenstein on Class Actions (6th ed. § 19:6). That is so, because "once a class has been certified, the default presumption is that there is an attorney-client relationship between class counsel and the absent class members." *Id*. at § 19:2.

Rule 23 grants federal courts "broad authority" to manage class action cases. *See Gulf Oil*, 452 U.S. at 100. That authority includes the power to restrict abusive communications directed at class members. *Id*. at 101-02. However, any order

restricting communications with members of a class must be "carefully drawn" to "limit[] speech as little as possible" and "should be based on a clear record and specific findings" demonstrating a "likelihood of serious abuses." *Id.* at 102, 104, 101.

Rule 23 also gives the Court jurisdiction over non-party counsel solicitations. *Fox*, 35 F.4th at, 1047. ("[A] court can control abusive communications of those— parties and nonparties alike—who threaten or interfere with a class action."); *McWilliams*, 176 F. Supp. 3d at 642, 644–45.; Newberg and Rubenstein on Class Actions § 9:10 (6th ed.) ("Courts employ the same *Gulf Oil* regime used for analyzing party communications when analyzing nonparty communications.").

Furthermore, "Rule 23(d) does not . . . require a finding of *actual* harm; it authorizes the imposition of a restricting order to guard against the '*likelihood* of serious abuses.'" *In re Sch. Asbestos Litig.*, 842 F.2d 671, 683 (3d Cir. 1988) (quoting *Gulf Oil*, 452 U.S. at 104) (emphasis in original). Communications qualify as "abusive" if they "'pose[] a serious threat to the fairness of the litigation process, the adequacy of representation, and the administration of justice generally.'" *Fox*, 35 F.4th at 1047 (quoting *In re Sch. Asbestos Litig.*, 842 F.2d at 680). This could include "sharing misleading information, misrepresenting the nature of the class action, or coercing prospective class members to opt out of a class." *Id.* Third-party solicitation of members of a certified class constitutes an abuse justifying an order

restricting communications with class members under *Gulf Oil*. *See Fox*, 35 F.4th at 1048.

## ARGUMENT

### I. The Vissers Fail to Address the Independent Basis for the Protective Order

The Vissers' appeal[3] is premised solely on the argument that the District Court erred in finding that absent class members were "known to be represented in the matter" after the class was conditionally certified, thereby rendering the Vissers' post-certification solicitation of class members appropriate. (Case No. 23-1471, Dkt. 40 at p. 16.) Even if the Vissers are correct that no attorney-client relationship is formed between Class Counsel and class members as a result of class certification (and, as explained below, they are not) the Vissers do not address the District Court's independent basis for entry of the Protective Order—that the Vissers had improperly solicited named Plaintiffs prior to class certification, in violation of the Michigan Rules of Professional Conduct.[4]

---

[3] While Plaintiffs-Appellants refer to the Vissers in the plural, it appears that the Vissers filed their Brief on Appeal regarding Visser and Associates, PLLC only. (See Case No. 23-1471, Dkt. 40 at p 10 ("Non-party Counsel Visser and Associates, PLLC ('Visser') has appealed [the District Court Orders] entered by the Western District of Michigan on May 15, 2023, barring Visser from 'communicating with, in any form, class members who had not retained Visser' before Preliminary Certification of the class in this action."))

[4] While not stated explicitly in the Court's Orders, another independent basis to affirm the Trial Court were the Vissers' misrepresentations to the District Court. The fact that, notwithstanding their representations that they had not solicited anyone

16

Class Counsel moved for the Protective Order on the basis that the Vissers had solicited named plaintiffs. (Motion for Protective Order, RE 245.) The District Court ordered the Vissers to appear for a hearing to show cause why their communications with named Plaintiffs "did not violate the Michigan Rules of Professional Conduct[.]" (Show Cause Order, RE 251, Page ID # 4278.) After the show cause hearing, the District Court issued an Order finding "that the Vissers have violated Rule 4.2(a) of the Michigan Rules of Professional Conduct by communicating with named plaintiffs in this matter, who are represented by [Class] counsel, in an attempt to solicit their business and encourage them to opt out of the class settlement." (Order Resolving Show Cause Order, RE 272, Page ID # 4443.) The District Court noted that it would "issue a separate opinion resolving Plaintiffs' emergency motion for a protection order…which will discuss any remedial measures that are necessary to cure the Vissers' violation of the Michigan Rules of Professional Conduct." (*Id*., at n. 1.)

The remedial measures were discussed in the Order Regarding Protective Order (RE 273), in which the District Court stated that it would "enjoin Visser from soliciting and communicating with, in any form, class members who had not retained

---

after certification, the District Court found that at least one letter was sent to an absent class member 39 days after certification is reason enough for the District Court to take steps to guard against the "likelihood of serious abuses." *Gulf Oil*, 452 U.S. at 104.

Visser before [class certification] regarding the subject matter of this lawsuit." (Order Regarding Protective Order, RE 273, Page ID # 4459.) The District Court found that entry of the Protective Order was warranted, because it would "remed[y] Visser's violation of Rule 4.2(a) of the Michigan Rules of Professional Conduct." (*Id.*, Page ID # 4460.) The District Court further noted that, because "Visser has communicated with, following preliminary certification of the class, class members that it did not represent prior to preliminary certification…the Court will allow Plaintiffs to conduct limited discovery[.]" (*Id.*, Page ID # 4459.)

The Vissers do not dispute that the Protective Order was based in part on the District Court's finding that, prior to class certification, they had contacted named plaintiffs in violation of the Michigan Rule of Professional Conduct 4.2(a), thereby conceding that the District Court had a valid basis for entry of the Protective Order. *See Grosswiler v. Freudenberg-Nok Sealing Techs.*, 642 Fed. App'x 596, 599 (6th Cir. 2016) ("Because Plaintiffs have failed to address the district court's alternate basis for its decision, the merits of the issue they do raise is irrelevant.").

## II. Class Certification Creates an Attorney-Client Relationship Between Absent Class Members and Class Counsel

The District Court correctly found that certification of the class created an attorney-client relationship between Class Counsel and members of the Class. (Order Regarding Protective Order, RE 273, Page ID # 4459.) The result reached by the District Court is not an outlier— the majority of courts that have considered the

issue have held that an attorney-client relationship arises between class counsel and absent class members upon certification of the class. As a leading treatise explains,

> With respect to post-certification communications, the great majority of decisions hold that absent class members are represented by class counsel so that, in accordance with ethical rules prohibiting *ex parte* communications with persons represented by counsel, defense counsel cannot communicate with class members outside the presence of class counsel. Many courts have adopted the view that the attorney-client relationship between class counsel and class members attaches upon entry of an order certifying the class and does not await the expiration of any opt-out period.

2 McLaughlin on Class Actions, § 11:1 (20th ed.) (collecting cases); *see also*, Newberg on Class Actions § 19:2 (6th ed.) ("[O]nce a class has been certified, the default presumption is that there is an attorney-client relationship between class counsel and the absent class members."); Federal Judicial Center, Manual for Complex Litigation (Fourth) § 21.33 ("Once a class has been certified, the rules governing communications apply as though each class member is a client of the class counsel."); Restatement (Third) of Law Governing Lawyers § 99 cmt. *l* ("[A]ccording to the majority of decisions, once the proceeding has been certified as a class action, the members of the class are considered clients of the lawyer for the class[.]"); *Van Gemert v. Boeing Co.*, 590 F.2d 433, 440 n. 15 (2nd Cir. 1978), *aff'd*, 444 U.S. 472 (1980) ("A certification under Rule 23(c) makes the Class the attorney's client for all practical purposes"); *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1207 n. 28 (11th Cir. 1985) ("At a minimum, class counsel represents

all class members as soon as the class is certified."); *Hammond v. City of Junction, Kan.*, 126 F. App'x 886, 889 (10th Cir. 2005) ("there was no attorney-client relationship between [class counsel] and [a putative class member] until the class was certified[.]"); *In re Federal Skywalk Cases*, 97 F.R.D. 370, 376 (W.D. Mo. 1983) ("[Upon certification of the class] this Court expressly created an attorney-client relationship between the counsel appointed to represent the class and those class members who did not have individual attorneys representing them."); *Resnick v. Am. Dental Ass'n*, 95 F.R.D. 372, 376 (N.D. Ill. 1982) ("Without question the unnamed class members, once the class has been certified, are 'represented by' the class counsel."); *Bower v. Bunker Hill Co.*, 689 F. Supp. 1032, 1034 (E.D. Wash. 1985) ("[D]efense counsel must treat plaintiff-class members as represented by counsel [after class certification.]"); *Fulco v. Continental Cablevision, Inc.*, 789 F. Supp. 45 (D. Mass. 1992) ("[O]nce the court enters an order certifying a class, an attorney-client relationship arises between all members of the class and class counsel."); *Harris v. Vector Marketing Corp.*, 716 F. Supp. 2d 835, 847 (N.D. Cal. 2010) ("[M]ost courts have held that, 'once a class has been certified, the rules governing communications with class members apply as though each class member is a client of the class counsel.'") (quoting Manual of Complex Litig. § 21.33 at 300 (4th ed. 2004)) (brackets omitted); *Dodona I, LLC v. Goldman, Sachs & Co.*, 300 F.R.D. 182, 187 (S.D.N.Y. 2014) ("The majority of courts….have found that class

certification itself creates an attorney-client relationship[.]"); *McWilliams*, 176 F. Supp. 3d at 642 ("Upon certification, class counsel *does* represent absent class members.") (emphasis in original); *Arkansas Teacher Retirement Sys. v. State Street Bank and Trust Co*., 512 F. Supp. 3d 196, 253-54 (D. Mass. 2020) ("[O]nce a class has been certified, the default presumption is that there is an attorney-client relationship between class counsel and the absent class members.") (quoting 6 Rubenstein, Newberg on Class Actions § 19:2); *Velasquez-Monterrosa v. Mi Casita Restaurants*, No. 5:14-CV-488-BO (E.D.N.C. Sept. 30, 2016), 2016 WL 7429200, at *2 ("Upon class certification, an attorney-client relationship was created between class counsel and class members."); *DaSilva v. Border Transfer of MA, Inc.*, No. 16-11205-PBS (D. Mass. 2018), 2018 WL 1567626, at *2 ("[W]here…a class has already been certified, an attorney-client relationship arises between absent class members and class counsel."); *McKenzie Law Firm, P.A. v. Ruby Receptionists, Inc*., No. 3:18-cv-1921-SI (D. Or. May 29, 2020), 2020 2789873, at *2 ("As a result of class certification and appointment class counsel, an attorney-client relationship is formed between class counsel and all absent class members on all matters regarding the litigation.").

The Vissers rely on a decades-old ethics opinion from the State Bar of Michigan in support of their argument that an attorney-client relationship does not arise between class counsel and absent class members until the expiration of the opt-

out period. However, as the authors of Michigan Ethics Opinion No. RI-219, Sept. 6, 1994 noted, "[c]ourts that have addressed the issue have split over whether putative class members…prior to the end of the opt-out period, are 'represented by class plaintiffs' counsel' within the meaning of the ethics rules." Michigan Ethics Opinion No. RI-219, Sept. 6, 1994 at 2. Moreover, ethics opinions are not binding on this Court. *See, Melo v. United States*, 825 F. Supp. 2d 457, 463 n. 2 (S.D.N.Y. 2011) ("[A]n ABA ethics opinion is not binding on this Court."); *Morris & Doherty, P.C. v. Lockwood*, 672 N.W.2d 884, 896 (Mich. Ct. App. 2003) ("[E]thical opinions clearly are not binding on this Court and provide little, if any, precedential value, especially where statutory and judicial rules are completely dispositive with regard to the issues that the parties present.").

## III. The Protective Order was Based on the District Court's Findings that the Vissers' Solicitations Presented a Likelihood of Serious Abuse

The District Court imposed the Protective Order because it determined that the Vissers had improperly solicited named Plaintiffs prior to certification of the class and had continued their solicitation campaign after certification of the class, by contacting members of the certified class. The Vissers do not offer any argument that the District Court's finding that their solicitation of named Plaintiffs is insufficient to support the Protective Order. This Court has recognized that solicitation of members of a certified class by third parties is an abuse justifying a protective order. *See Fox*, 35 F.4th at 1048. And, this Court has already determined

that the "district court had a legal and factual basis to conclude that this communication threatened the administration of the class action." (Case No. 23-1471, Dkt. 36 at p. 3.)

The District Court's determination that there was a likelihood of serious abuses justifying the Protective Order was based on its finding that "the Vissers have violated Rule 4.2(a) of the Michigan Rules of Professional Conduct by communicating with named plaintiffs in this matter, who are represented by counsel, in an attempt to solicit their business and encourage them to opt out of the class settlement." (Order Resolving Show Cause Order, RE 272, Page ID # 4443.) Specifically, the District Court found "that the Vissers have communicated with at least seven different named plaintiffs (in six letters)." (*Id*., Page ID # 4452.) The District Court determined that the Vissers' solicitation letters were abusive because the "letters could certainly undermine the solicited individual's confidence in class counsel and the settlement agreement. Afterall, the solicitation letters are presumably intended to encourage class members to opt out of the class." (*Id*., Page ID # 4453.) And, the District Court found that the Vissers' excuse that the letters were inadvertently sent was not credible, because "[f]ollowing their experience in *Fox*, the Vissers should have been well-versed in class action procedures and the proper method to communicate with potential class members." (*Id*.)

The District Court also found that, contrary to the Vissers' assurances to the Court that "no letters were sent after the Court granted preliminary certification and that no new letters would be sent[,]" the Vissers had continued to solicit class members after certification. (Order Regarding Protective Order, RE 273, Page ID # 4457-4458.) Specifically, the Court found that the Vissers sent a solicitation letter to Christen McKinney, a member of the class, more than five weeks after the class was certified. (Order Regarding Protective Order, RE 273, Page ID # 4457.) The District Court found that, while the Vissers had a telephone call with Ms. McKinney on February 3, 2023 and sent her an "Authority to Represent" agreement prior to certification, she never returned the signed agreement. (*Id.*) Accordingly, because Ms. McKinney (and other similarly situated potential clients of the Vissers) had not returned the signed Authority to Represent agreement, or otherwise manifested her intention to retain the Vissers, the District Court found that she was not represented by the Vissers at the time the class was certified and was therefore represented by Class Counsel.[5] (*Id.*) The District Court found the Vissers' solicitation of Ms.

_____

[5] The Vissers' post-certification solicitations included more than the single letter discussed in the Order Regarding Protective Order. Pursuant to the Protective Order, the Vissers were required to produce an accounting of "class members Visser solicited/communicated with, in any form, following the Court's preliminary approval of the class[.]" (Order Regarding Protective Order, RE 273, Page ID # 4459-4460.) In their response to the Protective Order (the "Accounting"), the Vissers claim that Exhibit 1 thereto identifies "[c]lients for whom Visser had opened a file under the client name prior to March 24, but whose signed Authority to Represent had not yet been, and was later, received by Visser." (RE 283, Page ID # 4505.) It is

24

McKinney abusive because "it is unethical for other attorneys to communicate with class members about the representation after the class has been certified." (*Id.*, Page ID # 4459, quoting *McWilliams*, 176 F. Supp. 3d at 642.

The Vissers argue that the District Court erred in finding their post-certification solicitations abusive because the Vissers "had already established a professional relationship" with the recipients, prior to certification of the class. (Case No. 23-1471, Dkt. 40 at p. 24.) This argument is unavailing. An attorney-client relationship may exist in the absence of a signed writing, but the determination of the existence of an attorney-client relationship is based on whether the "purported client reasonably believes an attorney-client relationship has been created." *MJK Family LLC v. Corporate Eagle Mgmt. Servs., Inc.*, 676 F. Supp. 2d 584, 592 (E.D. Mich. 2009) (quotation marks omitted). Here, each Authority to Represent was accompanied by a cover letter stating "[w]e cannot begin proceedings until [the

---

clear that the Vissers represented falsely to the District Court that "[t]here were <u>no communications between the parties</u> after March 24 and receipt of the signed Authority to Represent after March 24, 2023." (*Id.*) (emphasis added.) In fact, at least two of the "clients" the Vissers identify on Exhibit 1 were contacted by the Vissers after March 24, 2023, and were asked to sign a retention agreement. "King, Howard & Bob Angel" are listed on Exhibit 1 of the Accounting. (RE 283-1, Page ID # 4511.) While the Vissers claim there were "no communications between the parties after March 24, 2023," in an April 12, 2023 letter from the Vissers to "Howard King & Bob Angel," the Vissers attacked the preliminarily-approved settlement and asked King and Angel to sign an enclosed "Authority to Represent." (*See* Case No. 23-1471, Dkt. 31-2, at p. 2.).

Authority to Represent] has been returned." (RE 283-4, Page ID # 4517.) Accordingly, prospective clients could not reasonably believe they had retained the Vissers for representation before the Authority to Represent was signed and returned.

Moreover, contrary to their representations in the Brief, it is apparent that the Vissers did not believe they had an attorney-client relationship with persons who had been sent, but did not return, an Authority to Represent. The follow-up correspondence the Vissers sent to such persons stated, "absent class members are represented by the class counsel, however, you still have the right to retain your own legal counsel[,]" and "[i]f you are still interested in retaining our firm for representation and advice, I am enclosing another copy of the Authority to Represent that you will need to sign and return to us. This will allow us to begin the process of reviewing your claim." (RE 283-5, Page ID # 4519.) Nothing in these communications would lead a "purported client [to] reasonably believe[] an attorney-client relationship ha[d] been created" prior to receipt of that correspondence.

*In re Community Bank of Northern Virginia*, 418 F.3d 277 (3rd Cir. 2005), cited by the Vissers, is inapposite. There, the district court entered a protective order barring counsel opposed to the settlement from communicating with class members without conducting a hearing, or otherwise giving the affected counsel an

opportunity to be heard. *Id*. at 288. The Third Circuit found that the entry of the protective order ran afoul of *Gulf Oil*, because the court failed to hold a hearing and made no findings regarding why the communications at issue were abusive. *Id*. at 311-12. Furthermore, the district court had barred competing counsel from communicating with any member of the class, including class members who had retained the competing counsel prior to certification of the class. *Id* at 289. In contrast, in the case at bar the District Court afforded the Vissers a full hearing on the record, determined that the Vissers had contacted represented named plaintiff class members before certification and represented class members after certification, in violation of the Michigan Rules of Professional Conduct and only prohibited the Vissers from soliciting class members who had not retained the Vissers prior to class certification. (Order Resolving Order to Show Cause, RE 272; Order Regarding Protective Order, RE 273.)

## IV.    The Protective Order is Narrowly Tailored

The Protective Order bars the Vissers from "soliciting and communicating with, in any form, any class members…that had not retained the Vissers before March 24, 2023, regarding the subject of this matter." (Protective Order, RE 274, Page ID # 4463.) As the District Court explained, if the Vissers' assertions that they had stopped communicating with class members they did not represent after class

certification "were true, this order would not affect Visser's conduct." (Order Regarding Protective Order, RE 273, Page ID # 4459.)

In its Order Denying Motion to Stay, the District Court recognized that the Protective Order, as originally drafted, was too broad. (RE 287, Page ID # 4662.) As originally drafted, the Protective Order barred the Vissers from communicating with class members who sought to retain the Vissers for representation following certification of the class, even if the Vissers had not solicited the class member. (*Id*.) The District Court clarified that the Protective Order did not bar the Vissers from communicating with any such class members, but cautioned that if "class counsel questions whether the Vissers' representation of such class members is proper, the Vissers must be able to establish that they have never contacted, solicited, or otherwise communicated with such people—prior to *and* following preliminary certification of the class—regarding the subject matter of this case." (*Id*) (emphasis in original.)

## CONCLUSION

For the reasons set forth above, Class Counsel respectfully asks this Court to affirm the District Court's Orders.

Dated: October 13, 2023      Respectfully submitted,

*/s/ David H. Fink*      */s/ James Shek*
FINK BRESSACK      James Shek (P37444)
David H. Fink (P28235)      *Co-Lead Class Counsel*
Nathan J. Fink (P75185)      P.O. Box A

Philip D.W. Miller (P85277)
*Co-Lead Class Counsel*
38500 Woodward Ave., Suite 350
Bloomfield Hills, Michigan 48304
Tel: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
pmiller@finkbressack.com

Allegan, MI 49010
Tel: (269) 673-6125
jshekesq@btc-bci.com

*/s/ Owen D. Ramey*
LEWIS REED & ALLEN, P.C.
Owen D. Ramey (P25715)
Ronald W. Ryan (P46590)
*Co-Lead Class Counsel*
136 East Michigan Ave., Suite 800
Kalamazoo, Michigan 49007
Tel: (269) 388-7600
oramey@lewisreedallen.com
rryan@lewisreedallen.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(B) and Sixth Circuit Local Rule 32(a), I hereby certify that the foregoing brief contains 6,139 words, which is within the 13,000-word limit established by Fed. R. App. P. 32(a)(7)(B).

*/s/ David H. Fink*

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2023, I electronically filed the foregoing document and this Certificate of Service with the Clerk of the Court using the ECF system, which sent electronic notification of such filing to all counsel of record.

FINK BRESSACK

By: _/s/ Nathan J. Fink_____
Nathan J. Fink (P75185)
38500 Woodward Ave., Suite 350
Bloomfield Hills, Michigan 48304
Tel: 248.971.2500
Fax: 248.971.2600
nfink@finkbressack.com

**ADDENDUM**

**Designation of Relevant District Court Documents**

| RE | Description of Document | Page ID # |
|:---:|---|:---:|
| 234 | Preliminary Approval Order | 4131-4148 |
| 241 | Order Denying Motions to Consolidate | 4162-4168 |
| 245 | Motion for Protective Order | 4182-4183 |
| 246-1 | Pre-Certification Visser Solicitation Letters | 4205-4211 |
| 248 | Order Directing Response | 4220-4223 |
| 250 | Response to Motion for Protective Order | 4227-4251 |
| 251 | Order to Show Cause | 4276-4279 |
| 272 | Order Resolving Show Cause Order | 4443-4455 |
| 273 | Order Regarding Protective Order | 4456-4462 |
| 274 | Protective Order | 4463-4464 |
| 275 | Visser Notice of Appeal | 4465-4466 |
| 276 | Visser Emergency Motion to Stay | 4467-4474 |
| 283 | Visser Accounting of Solicited Class Members | 4502-4509 |
| 283-1 | List of Purported Visser Clients who Returned Executed Authority to Represent After Class Certification | 4511 |
| 283-4 | Exemplar Authority to Represent Cover Letter | 4517 |
| 283-5 | Exemplar Post-Certification Solicitation Letter | 4519 |
| 287 | Order Denying Visser Motion to Stay | 4659-4663 |